1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES COMMODITY
FUTURES TRADING COMMISSION,

Plaintiff,

v.

JAMES A. MAGGIO; TRADE RISK
MANAGEMENT, LLC (Washington); and
TRADE RISK MANAGEMENT, LLC
(Oregon),

Defendants.

CASE NO. C05-5766RJB

ORDER DENYING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DENYING DEFENDANTS'
MOTION TO DISMISS

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Dkt. 53) and Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) (Dkt. 56). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, the defendants sell a stock market analysis service known as Sigma Band Charting through an internet website and materially misrepresent the risk and profit-making ability of the service. Dkt. 1 at 2. The complaint alleges that the Defendants' conduct violates the Commodity Exchange Act, § 1 *et seq., as amended*, 7 U.S.C. § 1 *et seq.* (2002) ("the Exchange Act") and the Commodities Futures Trading Commission Regulations, 17 C.F.R. § 1 *et*

ORDER
Page 1

1   *seq.* (2004) ("Commission Regulations").  *Id.* at 7.  Specifically, the complaint alleges that the

2   Defendants' made the following statements:

3       •       with respect to profit, "That means a 99% chance of success – and profit" and
                "What Would it be Worth to YOU, to Know – Not Guess, Not Hope, but Know
4               You Have a 99% Chance of Making Money, Every Time You Trade?"

5       •       with respect to risk, "Charting Service that gives You the Tools to Trade with
                Less Than 2% Risk," and "Now, for the first time, it means being able to trade
6               knowing that you have only 1% chance of the market going against you."

7   *Id.*  Plaintiff alleges these statement violate Section 4*o* of the Exchange Act:

8           It shall be unlawful for a commodity trading advisor, associated person of a commodity
            trading advisor, commodity pool operator, or associated person of a commodity pool
9           operator by use of the mails or any means or instrumentality of interstate commerce,
            directly or indirectly--
10
                    (A) to employ any device, scheme, or artifice to defraud any client or participant or
11              prospective client or participant; or

12                  (B) to engage in any transaction, practice, or course of business which operates as
                a fraud or deceit upon any client or participant or prospective client or participant.
13
14  Exchange Act, § 4*o*(A), *as amended*, 7 U.S.C. § 6*o*(A).  Additionally, Plaintiff alleges these

15  statement are also unlawful advertising under Commission Regulations:

16          No commodity pool operator, commodity trading advisor, or any principal thereof, may
            advertise in a manner which:
17
                    (1) Employs any device, scheme or artifice to defraud any participant or client or
18              prospective participant or client;

19                  (2) Involves any transaction, practice or course of business which operates as a
                fraud or deceit upon any participant or client or any prospective participant or
20              client;

21  17 C.F.R. § 4.41(a)

22          On August 10, 2007, the Defendants filed a Motion for Summary Judgment (Dkt. 53) and

23  a Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) (Dkt. 56).

24

25                                      **II. DISCUSSION**

26  **A. Summary Judgment**

27          Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

28

ORDER
Page 2

1   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

2   to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

3   P. 56(c).  There is no genuine issue of fact for trial where the record, taken as a whole, could not

4   lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v.*

5   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

6   significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P.

7   56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

8   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

9   of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v.*

10  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

11          The determination of the existence of a material fact is often a close question.  The court

12  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

13  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.*

14  *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of

15  the nonmoving party only when the facts specifically attested by that party contradict facts

16  specifically attested by the moving party.  The nonmoving party may not merely state that it will

17  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

18  to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

19  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

20  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).  And, "mere allegation

21  and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v.*

22  *Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

23          Finally, once the moving party has raised an issue, based on the pleadings, the burden

24  shifted to the nonmoving party to make a sufficient showing on all essential elements of her claim.

25  *See Celotex Corp. V. Cartrett*, 477 U.S. 317, 323-325 (1985).  In addition, "[i]t is not our task,

26  or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely

27  on the nonmoving party to identify with reasonable particularity the evidence that precludes

28

1  summary judgment." *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995).

2      Defendants advance six arguments in support of their motion for summary judgment: (1)

3  Plaintiff lacks evidence that Defendants are Commodity Trading Advisors; (2) Defendants are

4  exempt publishers under the Exchange Act; (3) Defendants did not have clients to defraud; (4)

5  Defendants' statements were not material; (5) Plaintiff lacks evidence that Defendants' statements

6  were offered with the intent to deceive, and; (6) Plaintiff lacks evidence that Defendants'

7  statements effected any of Defendants' newsletter subscribers.  Dkt. 53 at 3-4.

8

9      **1. Commodity Trading Advisors**

10      A Commodity Trading Advisor is defined as a person who, for compensation or profit,

11  engages in the business of advising others, either directly or through publications, writings, or

12  electronic media, as to the value of or the advisability of trading in commodity futures contracts

13  or commodity options.  7 U.S.C. § 1a(6).

14      Defendants argue that Plaintiff has failed to produce evidence that Defendants are

15  Commodity Trading Advisors.  Dkt. 53 at 5.  On November 21, 2006, Plaintiff answered

16  Defendants' interrogatories by stating that it had not identified any witness in connection with the

17  allegation that, while acting as Commodity Trading Advisors, Defendants violated the Exchange

18  Act and the Commission Regulations.  Dkt. 54-4 at 13.  Plaintiff also answered that it did not

19  have any additional evidence for this allegation.  *Id.*  While Plaintiffs' lack of effort is not

20  dispositive, it sets the tone for the remainder of this motion.

21      Although Plaintiff does have an obligation under Fed. R. Civ. Pro. 26(e) to supplement its

22  interrogatory answers, the Plaintiff is not bound to its initial discovery for the purposes of this

23  motion.  *See* Fed. R. Civ. P. 56(e)(allowing supporting affidavits to supplement party's

24  pleadings).  Plaintiff did cite to admissions in the Defendants' answer and attached other evidence

25  in opposition.  Dkt. 59 at 4-6.  This evidence creates a question of fact whether Defendants were

26  acting as Commodity Trading Advisors.  Therefore, the Court should decline to grant Defendants'

27  motion for summary judgment on this issue.

28

ORDER
Page 4

1    **2. Publisher's Exemption**

2        Defendants argue that, even if they are Commodity Trading Advisors, they are exempt

3    from the Exchange Act under the publisher's exemption.  Plaintiff counters that Defendants do

4    not qualify for the exemption because the material Defendants publish is more than incidental to

5    Defendants business.

6        Exemptions from the Exchange Act include "any news reporter, news columnist, or news

7    editor of the print or electronic media," and "the publisher or producer of any print or electronic

8    data of general and regular dissemination."  7 U.S.C. § 1a(6)(B).  An exemption only applies,

9    however, "if the furnishing of such services by persons referred to in [the exemption] is solely

10   incidental to the conduct of their business or profession."  *Id.* § 1a(6)(C).

11       Defendants argue that they qualify for the publisher exemption, citing *Lowe v. SEC*, 472

12   U.S. 181 (1985) and *Ginsburg v. Agora, Inc.*, 915 F. Supp. 733 (D.Md. 1995).  Dkt. 53 at 7.  In

13   *Lowe*, the Supreme Court discussed and interpreted similar language regarding the exclusion of

14   "bona fide publications" from the Investment Advisors Act of 1940.  *Lowe*, 472 U.S. at 207-211.

15   While *Lowe* held that the Investment Advisors Act excluded certain publishers, the Supreme

16   Court has not considered the exemption of publishers from the Exchange Act.  In *Ginsburg*, the

17   District Court of the District of Maryland relied on *Lowe* in holding that the publisher of an

18   investment newsletter was exempted from the Exchange Act.  *Ginsburg*, 915 F. Supp. at 737.  It

19   does not appear that the 9th Circuit has applied the publisher's exemption in a factual situation

20   similar to the one before this Court.

21       Plaintiff argues that the publisher exemption is limited and that the exemption does not

22   include publication of trading information that is more than incidental to the Defendants' business

23   or profession.  Dkt. 59 at 7; *see R&W Technical Services, Ltd. v. Commodity Futures Trading*

24   *Commission*, 205 F.3d 165 (5th Cir. 2000)(software distributor was an impersonal publisher that

25   fell within the plain meaning of Commodity Trading Advisor).  However, the court in *R&W*

26   recognized that lower courts are split on the issue of whether impersonal publishers are covered

27   by the Exchange Act.  *Id.*

28

1    In this case, even if Defendants can be considered impersonal publishers, Defendants have
2    not shown that their website advice and published information are incidental to their business.
3    The website and publications are their business.  Defendants' website offers to subscribers a free
4    newsletter as well as subscription access to Sigma Band charts.  Dkt. 53 at 1-2.  The Court is not
5    persuaded by Defendants' argument that this service is similar to the impersonal and incidental
6    advice one would receive from the Wall Street Journal.  Dkt. 53 at 7.  In summary, Defendants
7    have not shown that they are entitled to summary judgment on the issue of whether they are
8    exempt from the Exchange Act under the publisher's exemption.  Therefore, the Court should
9    deny Defendants' motion for summary judgment on this issue.

10

11   **3. Status of Subscribers**

12   Defendants assert that their subscribers are not "clients" as defined in the Exchange Act.
13   Plaintiff counters that the statutory term "client" extends to Defendants' subscribers.

14   Commodity Trading Advisors are prohibited from either directly or indirectly employing
15   "any device, scheme, or artifice to defraud any client or participant or prospective client or
16   participant." 7 U.S.C. § 4*o*(1)(A).  In addition, Commodity Trading Advisors are prohibited from
17   engaging, either directly or indirectly, in "any transaction, practices or a course of business which
18   operated or operates as a fraud or deceit upon any client or participant or prospective client or
19   participant."  *Id.* § 4*o*(1)(B).  The Commission Regulations contain nearly identical language and
20   prohibit Commodity Trading Advisors from advertising in a manner that violates the Exchange
21   Act.  *See* 17 C.F.R. § 4.41(a)(1) and (2).  The term "client" is not defined in either the Exchange
22   Act or the Commission Regulations.  The term "participant" is defined in the Exchange Act and is
23   limited to large entities with substantial assets.  *See* 7 U.S.C. § 1a(28).

24   Defendants argue that they are not subject to the Exchange Act because they have no
25   "clients."  Dkt. 53 at 7.  Specifically, Defendants contend that the term "client" requires a more
26   personal relationship than the relationship Defendants had or have with their e-newsletter
27   subscribers.  *Id.* at 7-8.  Plaintiff not only has conveniently substituted the word "customer" for

28

1  "client" in both the complaint and the opposition brief but also has failed to cite case law

2  interpreting usage of the term "client." Dkt. 59 at 9. In fact, Plaintiff cites two cases in which the

3  court recognized the issue yet refused to rule on the definition of "client." *Id.* at 10, *citing R&W*

4  *Technical Servs. Ltd. v. CFTC*, 205 F.3d 165, 173 n.26 (5th Cir. 2000) *and CFTC v. Vartuli*, 228

5  F.3d 94, 102 (2nd Cir. 2000). In light of the parties' arguments, the Court recognizes that the

6  issue is a mixed question of statutory interpretation and facts relevant to the relationship between

7  the Defendants and their subscribers. Therefore, because summary judgment is not appropriate

8  when there remains an outstanding issue of material fact, the Court should deny the Defendants'

9  motion for summary judgment on this issue.

10

11  **4. Materiality of Statements**

12  "Whether a misrepresentation is material is 'a mixed question of law and fact,' involving

13  the 'application of a legal standard to a particular set of facts'." *R&W,* 205 F.3d at 169 *citing*

14  *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

15  Defendants argue that their statements were not material to the purchase or sale of

16  commodity futures. Dkt. 61 at 7. Although Defendants do not solicit trades or make buy/sell

17  recommendations, there are issues of fact as to whether their statements were material to the

18  purchase or sale of commodity futures. Therefore, the Court should decline to grant Defendants'

19  motion for summary judgment on this issue.

20

21  **5. Violation of Exchange Act, Section 4b**

22  The Exchange Act prohibits fraudulent misrepresentation in connection with the making of

23  a commodity futures contracts on behalf of another person. Exchange Act, § 4b, *as amended*, 7

24  U.S.C. § 6b. Defendants contend that the Plaintiff has presented no evidence of the intent to

25  deceive another person as required by Section 4b. Dkt. 53 at 10. Defendants, however, are

26  alleged to have violated Section 4o of the Exchange Act, not Section 4b. Dkt. 1; *see supra*,

27  section I. Therefore, the Court should decline to grant Defendants' motion for summary

28

1    judgment on the basis that Plaintiff has failed to present evidence that Defendants violated Section

2    4b of the Exchange Act.

3

4         **6. Evidence of Intent to Deceive or Effect of Fraud**

5         To show that the Defendants' violated the Exchange Act, the Plaintiff may demonstrate

6    that the Defendants acted with scienter to defraud a client or potential client without

7    demonstrating an effect on a victim.  *See Commodity Futures Trading Com'n v. Heffernan*, 245

8    F. Supp. 2d 1276, 1290 (S.D.Ga. 2003); 7 U.S.C. § 6o(1)(A) (commodity trading advisor may

9    not "employ" a fraud).   In the alternative, the Plaintiff may demonstrate that the Defendants,

10   though not acting with scienter, nonetheless engaged in a transaction, practice, or course of

11   business that had the effect of a fraud upon a client or potential client.  *See Heffernan*, 245 F.

12   Supp. 2d at 1290; 7 U.S.C. § 6o(1)(B) (commodity trading advisor may not engage in an act that

13   "operates" as a fraud).

14

15        **a. Scienter**

16        The element of scienter must be established by the Defendants' conduct.  A Commodity

17   Trading Advisor acts with scienter if the conduct was intended to defraud, manipulate, or deceive;

18   if the conduct was a severe departure from the standards of ordinary care; or if the conduct

19   involves highly unreasonable omissions or representations that present a danger of misleading

20   clients. *Heffernan*, 245 F. Supp. 2d at 1292.  Plaintiff argues that Defendants acted with scienter

21   because they had no reasonable basis to claim that individuals using Sigma Band charts could

22   trade futures markets with a 99% chance of making a profit and virtually no risk every time they

23   traded.  Dkt. 59 at 13.  While there is no question that Defendants made the statements at issue,

24   there remains a question of whether, at the very least, Defendants' misled website visitors into

25   subscribing to the Sigma Band service.  Therefore, the Court should deny Defendants' motion for

26   summary on this issue.

27

28

**b. Effect of Statements**

Defendants may violate the Exchange Act by committing actions that have the effect of fraud upon a client or potential client.  7 U.S.C. § 6*o*(1)(B).  Defendants argue that Plaintiff has presented no evidence that Defendants' statement had the effect of fraud upon anyone.  Dkt. 53 at 12; Dkt 61 at 8.  Plaintiff not only concedes it does not have evidence of reliance but also claims, without authority, that it is not required under Section 4*o*(1)(B) of the Exchange Act to provide evidence that individuals were actually defrauded.  Dkt. 59 at 16-17.  In other words, Plaintiff maintains that, even if every one of Defendants' subscribers actually made money in the commodities market, the Defendants could still have violated the Exchange Act by making statements that have the effect of fraud upon Defendants' website visitors.  While it does not appear that the 9th Circuit has addressed this issue, the 5th Circuit has decided a factually similar case and stated the following:

> In 1974, Congress gave the Commission even greater enforcement powers, in part because of the fear that unscrupulous individuals were encouraging amateurs to trade in the commodities markets through fraudulent advertising. Remedial statutes are to be construed liberally, and in an era of increasing individual participation in commodities markets, the need for such protection has not lessened.

*R&W*, 205 F.3d at 173 (footnotes omitted).

There is no question that the Defendants' posted the statements to their website.  There is a question of whether the statements were factually accurate as to profit and risk.  The Court should deny Defendants' motion for summary judgment on this issue because a question of fact remains whether Defendants' statements had the effect of fraud upon clients or prospective clients.


**B. Motion to Dismiss**

Under Rule 9(b) of the Federal Rules of Civil Procedure, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  A motion to dismiss a claim of fraud under Rule 9(b) is the functional equivalent of a motion to dismiss under Rule 12(b)(6).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107

1    (9th Cir. 2003).  A party may raise a Rule 12(b)(6) defense by a motion under Fed. R. Civ. P.

2    12(c).  Fed. R. Civ. P. 12(h)(2)(B).   Moreover, a party may file a motion for judgment on the

3    pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c).

4           Plaintiff argues that the Defendants' motion to dismiss is untimely.  Dkt. 58 at 2.  The

5    complaint was filed on November 25, 2005.  Dkt. 1.  The Defendants filed an answer to the

6    complaint on May 1, 2006.  Dkt. 10.  The Court ordered the parties to complete discovery by July

7    16, 2007, (Dkt. 27) and denied Defendants' motion to extend that deadline (Dkt. 45).   The Court

8    set the trial for November 13, 2007.  Dkt. 27.  In summary, the Defendant's filed this motion to

9    dismiss for failure to plead fraud with particularity almost two years after the complaint was filed,

10   more than a year after the answer was filed, two months after discovery was completed, and two

11   months before trial.

12          Additionally, if the Court granted the motion to dismiss, the case would only be

13   postponed.  When a complaint is dismissed under Rule 9(b), a court should grant leave to amend.

14   *Vess*, 317 F.3d at 1107.  Allowing the Plaintiff time to amend the complaint, as well as the

15   possibility of additional discovery due to the amendments, would more than likely delay trial in

16   this matter.

17          Therefore, the Court should deny the Defendants' motion to dismiss because the motion is

18   untimely and will delay the trial.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

ORDER
Page 10

1

**III. ORDER**

2

Therefore, it is hereby

3

**ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) (Dkt.

4

56) is **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 53) is **DENIED**.

5

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

6

of record and to any party appearing pro se at said party's last known address.

7

DATED this 1st day of October, 2007.

8

9

10

ROBERT J. BRYAN
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page 11